United States District Court
Southern District of Texas

**ENTERED**

April 29, 2022

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JEANETTE CLAREET, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-20-3305 |
| | § | |
| CITY OF HOUSTON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Jeanette Clareet allegedly ran a stop sign while driving home from a fast food restaurant late one night. Her two children were in the car. Houston Police Officers Muhammad Qazi and Daniel Iwai stopped her car and asked for her driver's license. Clareet initially provided a sheet of white paper with a photocopy of her driver's license and three different identifications relating to her work as a paramedic. Clareet then gave the officers her official driver's license, which matched the information on the piece of paper and was consistent with the information in the officers' database. Officers Qazi and Iwai nevertheless arrested Clareet for displaying a fictitious driver's license. Clareet was held in custody for less than 24 hours and no charges were filed. Clareet has sued the officers and the City of Houston under 28 U.S.C. § 1983, alleging civil rights violations. The court dismissed Clareet's claims against the City, and Clareet dropped her claim against the officers for their conduct in effectuating her arrest. Her remaining claim is for false arrest under the Fourth and Fourteen Amendments.

The officers moved for summary judgment, arguing that they had probable cause for the arrest because Clareet ran a stop sign and presented a photocopy of her driver's license. Based on the pleadings; the motions, responses and replies; the applicable law; the summary judgment

record; and the parties' briefs, Officer Qazi and Officer Iwai's motion for summary judgment, (Docket Entry No. 45), is denied.  The reasons for these rulings are explained below.

I.     **Background**

Officer Qazi was a probationary police trainee and Officer Iwai was a Field Training Officer in October 2019.  On the night of October 1, 2019, after watching movies with her two children, Clareet picked up fast food close to her house.  Her two children were in the car.  (Docket Entry No. 51-1 at 1).  Clareet stopped at the first stop sign between the burger outlet and her house so that she could separate the food for her children.  (Docket Entry No. 51-1 at 1).  Clareet's 17-year-old daughter, who was sitting in the front seat, recalls her mother stopping at the first stop sign and separating the food.  (Docket Entry No. 51-2 at 2).  Clareet was stopped at a second stop sign when she noticed a marked patrol car behind her.  (Docket Entry No. 51-1 at 1).  The officers initiated a traffic stop and Clareet pulled into a nearby parking lot.  (Docket Entry No. 51-1 at 2).  Clareet's daughter did not witness her mother running any stops and was confused about why her mother was pulled over.  (Docket Entry No. 51-2 at 2).

Clareet provided the officers with a photocopy of her driver's license printed on a sheet of paper.  That sheet also had photocopies of her Texas Department of State Health Services Emergency Medical Technician card, her American Heart Association Basic Life Support card, and her City of Houston Ambulance Driver permit.  (Docket Entry No. 45-5 at 2).  After Clareet provided the photocopy of her driver's license, Officer Qazi returned to the patrol car.   Body camera footage reveals the following occurred between Officer Qazi and Officer Iwai:

- Officer Qazi told Officer Iwai, "She has a paper copy."  (Docket Entry No. 45-5 at 6:40-6:54).

- Officer Iwai: "Ooh ooh, what do you think that is?" (Docket Entry No. 45-5 at 6:54-7:00).

- Officer Iwai inspected the photocopy and asked: "What do you think your charge is?" (Docket Entry No. 45-5 at 7:10-7:15).

- Officer Qazi responded, "For a paper copy?" and "guessed" that the charge would be that Clareet "did not present physical copy of license." (Docket Entry No. 45-5 at 7:15-7:23).

- Officer Iwai told Officer Qazi that his answer was incorrect.

- Officer Qazi asked to look at the piece of paper again. (Docket Entry No. 45-5 at 7:20-7:38).

- Officer Qazi then asked if the correct offense was driving without a license. (Docket Entry No. 45-5 at 7:38-7:42).

- Officer Iwai responded that this was also incorrect, and that the offense was "technically a Class A." (Docket Entry No. 45-5 at 7:45-7:55).

- Officer Qazi responded, "Class A what?" (Docket Entry No. 45-5 at 7:55-8:10).

- Officer Iwai says "you have a Class A offense right there . . . You have a display of a false or fictitious driver's license." (Docket Entry No. 45-5 at 7:55-8:20).

- Officer Qazi responded, "Because this doesn't match her face?" (Docket Entry No. 45-5 at 8:15-8:20).

- Officer Iwai explained, "No, you cannot present something like this to an officer. Cause [sic] you have no backing, it's not an actual, this is a false or fictitious ID. It is technically a Class A." (Docket Entry No. 45-5 at 8:20-8:35).

3

- Officer Qazi continued to ask questions, and Officer Iwai responded that "This is false . . . . This is a government document." (Docket Entry No. 45-5 at 8:40-8:48).

- Officer Qazi asked Officer Iwai, "so you can't make copies?" (Docket Entry No. 45-5 at 8:40-8:48).

- Officer Iwai then read the driver's license number for Officer Qazi to type into the database. Officer Iwai said, "You need to call your DA." (Docket Entry No. 45-5 at 8:45-8:58).

- Officer Qazi asked what he should tell the DA, and whether he should say that "she presented me with what, a photocopy of her license?" (Docket Entry No. 45-5 at 9:35-9:45).

- Officer Iwai responded, "This is where you're going to have to explain exactly what you have. . . . You have a fictitious ID. . . . not tampering with a government document, but it is a false or fictitious ID . . . technically." (Docket Entry No. 45-5 at (9:40-10:10).

- Officer Qazi replied, "Let me go ask her again if she has her physical ID or not." (Docket Entry No. 45-4 at 10:00-10:10).

- Officer Iwai responded, "Well she has already presented this to you." (Docket Entry No. 10:05-10:10).

The officers proceeded to call an Assistant District Attorney. Their microphones were muted so the conversation between the officers and the Assistant District Attorney is mostly inaudible. Officer Iwai's microphone was turned on for parts of the conversation. The officers are heard explaining that there is not a reverse side to the driver's license, which was on a white 8-by-11 piece of paper, with other identification cards photocopied. The officers explained that

the document looked like it had been prepared for work or insurance purposes.  (Docket Entry No. 45-6 at 11:40-13:49).

When the officers returned to the vehicle, Clareet showed them that she had contacted her car insurance provider and received a copy of her car insurance policy on her cell phone.  (Docket Entry No. 51-1 at 3).  She also provided her official—and valid—driver's license.  The officers then asked Clareet to step out of her vehicle, explained the charge to her, and asked Clareet's 17-year-old daughter to arrange for another adult to pick them up.  The officers arrested Clareet and brought her to the Joint Processing Center.

Officer Qazi's offense report explains:

Upon request the defendant presented a photocopy of her Texas Drivers License printed on a 9x11 white paper along with other documents printed on the same paper.

I observed the drivers license to be fake based on my training and experience. She presented me with a photocopy of her Texas drivers license on a 9x11 piece of white paper. The fictitious driver license was on a photocopy with other photocopied documents. There was no backside to the drivers license including the barcode or black scan strip. Based on my training and experience I knew the document to be fictitious because it did not feel like a drivers license and felt like paper. I observed that the document was faded and did not have the contrast and color of a Texas Drivers License.

We called the DA's office and explained that she had presented a fictitious Drivers License. ADA Ortiz accepted the charges displaying a fictitious driver's license for pleading 830.

We returned to the defendants vehicle and at this point she presented a valid Texas Drivers License. We placed the defendant in handcuffs.

(Docket Entry No. 45-4 at 5).  Clareet provided a statement for the offense report stating: "I had my valid Texas Driver's License on my person. I provided the one on the white paper because it was convenient to reach. I had no idea that this is a crime."  (Docket Entry No. 45-4 at 6).

Clareet was released within 24 hours.  No charges were filed against her.  (Docket Entry No. 45-10).  This lawsuit and motion followed.

## II.    The Summary Judgment Standard and Evidence

### A.    The Legal Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)).  "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating'" that "there is an issue of material fact warranting trial.'"  *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).  The moving party must demonstrate the absence of a genuine issue of material fact, but it need not need to negate the elements of the nonmovant's case.  *Austin v. Kroger Tex., LP*, 864 F.3d 326, 335 (5th Cir. 2017) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075, 1076 n.16 (5th Cir. 1994) (en banc)).  "If the moving party fails to meet [its] initial burden, [the summary judgment motion] must be denied, regardless of the nonmovant's response."  *Pioneer Expl., LLC*

*v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleo Corp.,* 749 F.3d 314, 317 (5th Cir. 2014). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019) (quotations omitted). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., LLC v. River Birch, Inc.,* 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)). When the facts are undisputed, the court "need only decide whether those undisputed facts are material and entitle the movant to judgment as a matter of law." *Flowers v. Deutsche Bank Nat. Tr. Co.*, 614 F. App'x 214, 215 (5th Cir. 2015).

### B.    The Record

The defendants submitted the following evidence in support of their motion for summary judgment:

- Muhammad Qazi's deposition, (Docket Entry No. 45-2);

- Daniel Iwai's deposition, (Docket Entry No. 45-3);

- the offense report for J. Clareet, (Docket Entry No. 45-4);

- evidence related to the offense report for J. Clareet, (Docket Entry No. 45-5);

- the video footage from Officer Qazi's body camera, (Docket Entry No. 45-6);

7

- the video footage from Officer Iwai's body camera, (Docket Entry No. 45-7);

- Officer Qazi's declaration and Houston Police Department Training and Texas Commission on Law Enforcement Record, (Docket Entry No. 45-8);

- Officer Iwai's declaration and Houston Police Department Training and Texas Commission on Law Enforcement Record, (Docket Entry No. 45-28);

- Jeanette Clareet's deposition transcript, (Docket Entry No. 45-9);

- Harris County Sherriff's Office letter, (Docket Entry No. 45-10);

- General Order 500-07, Filing Proper Charges, (Docket Entry No. 45-11);

- 200-2.09 SOP DA Intake, (Docket Entry No. 45-12);

- General Order 800-07, Criteria for Submitting Incident Reports, (Docket Entry No. 45-13);

- 200-2.10 SOP DA Refuses Charges, (Docket Entry No. 45-14);

- General Order 400-28, Body Worn Cameras, (Docket Entry No. 45-15);

- General Order 500-01, Effecting Arrests and Searches, (Docket Entry No. 45-16);

- General Order 500-14, Class C Misdemeanors, (Docket Entry No. 45-17);

- Shan Ta Taylor - Offense Report, (Docket Entry No. 45-18);

- Shan Ta Taylor Certified Harris County District Court records, (Docket Entry No. 45-19);

- Christopher Barley - Offense Report, (Docket Entry No. 45-20);

- Nhan Hoang Pham - Offense Report, (Docket Entry No. 45-21);

- Nhan Hoang Pham - Certified Harris County District Court records, (Docket Entry No. 45-22);

- Pieter Baay - Offense Report, (Docket Entry No. 45-23);

- Houston Police Department Standard Operating Procedures 200-2.01 Effecting an Arrest, (Docket Entry No. 45-24);

- Houston Police Department Standard Operating Procedures 200-2.03 Searching a Prisoner, (Docket Entry No. 45-25);

- a business record affidavit for the Houston Police Department for Body Worn Camera Videos, (Docket Entry No. 45-26); and

- a business record affidavit for the Houston Police Department for all records, (Docket Entry No. 45-27).

Clareet provided the following responsive evidence:

- Jeanette Clareet's declaration, (Docket Entry No. 51-1); and

- Kierra Sanders' declaration, (Docket Entry No. 51-2).

## C.      The Motion to Strike

Under Fed. R. Civ. P. 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (alteration in original) (quoting 11 Moore's Federal Practice-Civil ¶ 56.91 (2017)). When considering evidence in improper form during summary judgment, there is a "precondition . . . that the party submitting the evidence must show that it will be possible to put the information . . . into an admissible form." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 521-22 (5th Cir. 2021) (citations and quotation marks omitted); *see also* Fed R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment ("The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.").

Kierra Sanders, Clareet's daughter who was 17 years old and in the car at the time of the arrest, gave a declaration. The officers move to strike it for untimely disclosure. The officers

argue that at the court's discovery hearing on January 10, 2022, the officers' counsel asked Clareet's counsel to identify potential witnesses by name, as opposed to "my children, my family," before the deadline for filing dispositive motions.  Clareet's counsel confirmed that there were not additional witnesses.  Counsel later submitted Sanders's declaration—in response to the motion for summary judgment.  Clareet did not respond to the motion to strike.

Rule 26(a)(1) requires a party to disclose the identifying information of people that the party may use to support its claims or defenses. Fed R. Civ. P. 26(a)(1).  Clareet identified "[m]y children and friend, the officers, jail employees, my doctors, employer." (Docket Entry No. 38-2 at 10–11).  Clareet had her two children in her car with her at the time of the arrest.  The defendants cannot claim surprise that she submitted a declaration from one of them.  Although Clareet's disclosure was lacking in detail, it was sufficient to put the defendants on notice that Clareet believed her daughter had relevant information.  The defendants were notified well in advance of trial and have not shown that this delay in seeing the daughter's declaration has prejudiced them.

The defendants additionally argue that Sanders's statements are uncorroborated, include inadmissible hearsay, are not based on personal knowledge, and are improper lay opinion.  These generalized objections do not provide a sufficient basis to strike Sanders's declaration.

The defendants also move to strike Clareet's declaration based on lack of personal knowledge, hearsay, and as inconsistent with prior testimony.  To the extent that Clareet's statements in her declaration are inconsistent with what she stated in her deposition or inconsistent with the body camera recording, this goes to the weight and credibility of Clareet's statements and can be raised at trial.  The court relies only on Clareet's statements about what she saw and heard the officers do and say during the arrest.  And the court will not rely on Clareet's statements about her experience at the booking center, which the defendants argue are not based on personal

knowledge, because they are not relevant to whether the officers had probable cause when they arrested her.

### III.   Analysis

#### A.   Qualified Immunity

"Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a defendant invokes qualified immunity, "the burden shifts to the plaintiff to show that the defense is not available." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016). "But where factual disputes exist," the court must "accept the plaintiff's version," if it is substantiated. *Id.*

A plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021). "These steps may be considered in either order." *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018).

The first prong requires the plaintiff to point to and prove facts that could support a finding of a constitutional rights violation. *Pearson*, 555 U.S. at 232. The second prong requires the plaintiff to show that "'the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citation omitted). In other words, "[t]o defeat qualified immunity, a plaintiff must demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the

situation he confronted.'" *Shumpert*, 905 F.3d at 321 (emphasis omitted) (quoting *Hernandez v. United States*, 785 F.3d 117, 120 (5th Cir. 2015) (en banc)).   "In determining what constitutes clearly established law, this court first looks to Supreme Court precedent and then [to Fifth Circuit precedent].   If there is no directly controlling authority, [the] court may rely on decisions from other circuits to the extent that they constitute 'a robust consensus of cases of persuasive authority.'"   *Shumpert*, 905 F.3d at 320 (citation omitted).

     **B.**     **The False Arrest Claim**

     Clareet alleges that Officers Iwai and Qazi arrested her without probable cause, violating her right to be free from unlawful search, seizures, and detention under the Fourth and Fourteenth Amendments.   The officers respond that they had probable cause to believe that Clareet committed two offenses: (1) displaying a driver's license that was fictitious or altered, a Class A misdemeanor under Texas Transportation Code, 521.451; and (2) running a stop sign, a Class C misdemeanor under Texas Transportation Code, 544.010.

     "For warrantless arrests, the test for whether the 'police officer had probable cause to arrest is if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime.'"   *Zimmerman v. Cutler*, 657 F. App'x 340, 344 (5th Cir. 2016) (quoting *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) (alterations omitted)).   The court considers "reasonably trustworthy facts" and "the totality of the circumstances."   *Voss v. Goode*, 954 F.3d 234, 238–39 (5th Cir. 2020) (quoting *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006)).   "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."   *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983).   In the context of Fourth Amendment false arrest claims, "[e]ven law enforcement officials who reasonably, but mistakenly, conclude that probable cause is present

12

are entitled to immunity." *Crostley v. Lamar Cty., Texas*, 717 F.3d 410, 423 (5th Cir. 2013) (quoting *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir.1995)).

The officer's belief that probable cause is present must be objectively reasonable; it is irrelevant what his subjective beliefs were. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). The officer "may justify the arrest by showing probable cause for any crime." *Voss*, 954 F.3d at 238. The Fifth Circuit has explained that there is "no basis in precedent or reason" to require an officer to justify an arrest with the reasons that they gave at the scene of the arrest. *Id.* (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

Section 521.451 provides that a person may not:

> (1) display, cause or permit to be displayed, or have in the person's possession a driver's license or certificate that the person knows is fictitious or has been altered;

Tex. Transp. Code § 521.451.  The officers argue that they reasonably believed that Clareet had displayed an altered or fictitious driver's license by providing the photocopy of her license because Officer Iwai had made similar arrests in the past, the District Attorney's office had accepted the charges in those cases, and the Assistant District Attorney accepted the charge against Clareet. The officers argue that they do not have discretion under Harris County policy to decline to make an arrest or reduce the arrest to a lesser charge once the District Attorney's office accepts the charge.

The Transportation Code does not define "fictitious" as used in Section 521.451, but at least one state court has interpreted it to mean a driver's license that contains false information or that is a "fake" or "phony" license. *Deleon v. State*, 105 S.W.3d 47, 50–52 (Tex. App.—El Paso, no pet. 2003).  A photocopy of a valid license is not "fake" or "phony."  The officers have not pointed to evidence that any of the information on the photocopy of the license was false.  The

13

photocopy also had other forms of identification on the same piece of paper, showing that it was not presented as a fake license, but rather one of several forms of identification. The officers explained that they believed the photocopies were made for insurance or work purposes. And Clareet produced her official driver's license which matched the photocopy and showed that she was not presenting the piece of paper as a fake identification.

The defendants point to Officer Iwai's prior arrests of individuals for displaying a fictitious driver's license. The charges were dismissed in each of those cases. These previous arrests do not show that it was objectively reasonable for the officers to conclude that presenting a photocopy of a license was a crime. And those prior arrests are readily distinguishable. The defendants point to one arrest for tampering with a government document and forgery after the suspect produced a fake driver's license to Officer Iwai at a traffic stop. (Docket Entry No. 45-23 at 5–6). No charges were filed in that case. (Docket Entry No. 23-8). Another officer arrested a suspect who provided what was purported to be a driver's license, but the name on the license did not match the name associated with the license number in the police database, and was associated with a photograph in the database that did not match the suspect's appearance. The suspect eventually gave a name associated with a different photograph in the database, that did match his appearance. (Docket Entry No. 45-21 at 7). The offense report explained that the identification font and photo coloring were inconsistent with a real Texas driver's license. (Docket Entry No. 45-21 at 12). The officers here fall far short of what could support finding probable cause to arrest Clareet.

Officer Iwai had previously arrested a suspect who presented a photocopy of his identification and conceded that he had lost his driver's license two years earlier. (Docket Entry No. 45-20 at 6). The offense report explained that "there was no class B or above charge for

14

presenting a photo copy of a driver's license.   Hold was drop with no charges.   Case will be closed."   (Docket Entry No. 45-20 at 8).

In an offense report in a yet another case, Officer Iwai explained that the suspect provided him with a photocopy of her license, he "observed the photocopy of the drivers license was fake based on [his] training and experience," and observed that it did not have a backside because it was only a piece of white paper.   Although the photograph and information on the photocopy matched the information in the officer database, Officer Iwai arrested the suspect for displaying a fictitious driver's license.   (Docket Entry No. 45-18 at 7).   The officers point to the Assistant District Attorney's notice of dismissal for a fictitious license charge in that case.   The dismissal notice explained that "probable cause exists, but case cannot be proven beyond a reasonable doubt at this time."   (Docket Entry 45-19 at 6).

The District Attorney's acceptance of the charge in the earlier case or in this case does not show probable cause.   "[T]he officers' superior and the deputy district attorney are part of the prosecution team, their review also cannot be regarded as dispositive."   *Messerschmidt v. Millender*, 565 U.S. 535, 554 (2012).

The officers respond that there is no evidence that Officer Iwai knew that the charges were declined or dismissed because the reports were prepared by another detective.   But probable cause is based on the perspective of an objectively reasonable person, not the officer's subjective view. *See United States v. Lopez-Moreno*, 420 F.3d 420, 432 (5th Cir. 2005) ("[A]n officer's subjective intentions have no impact on analyzing reasonable suspicion or probable cause[.]").   Officer Iwai's mistaken understanding of whether and when displaying a non-official copy of a driver's license is a crime does not make his belief about the law reasonable.   "[A] reasonably competent public official should know the law governing his conduct."   *Blake v. Lambert*, 921 F.3d 215, 222 (5th

15

Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)).  The fact that Officer Iwai had previously misinterpreted the law without negative consequence does not show that his belief about the law was objectively reasonable.

The officers acknowledge that Clareet produced her valid driver's license; that it matched the photocopy of the license she previously provided and her license information in the database; and that at the time of the arrest they believed that the sheet of paper Clareet produced was prepared for insurance or work purposes.  Clareet explained that she gave the paper to the officers because it was easier to reach and it had a photocopy of her emergency medical training certifications.  The body camera footage reveals that Officer Qazi questioned the validity of the arrest at the time. Officer Iwai can be heard reassuring Officer Qazi that he thought the photocopy constituted a fictitious license.  Neither's subjective view is dispositive.  Officer Qazi has since committed to the position that a photocopy of a driver's license is a fictitious license, (Docket Entry No. 45-1 at 44), but his uncertainty at the time of arrest points to the unreasonableness of Officer Iwai's belief.

Even when facts are not disputed, summary judgment should be denied if competing inferences can be drawn from the undisputed facts on material issues. *Cortez-Burlingame, et al., v. Galveston County et al.*, No. 20-40540, 2022 WL 1114413, at *1 (5th Cir. Apr. 14, 2022).  A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The parties dispute whether the officers could reasonably have believed that the driver's license was fictitious.  There are competing inferences that can be drawn from the conversations between the officers and with Clareet, the paper provided to the officers, and Officer Iwai's past similar arrests.  These disputes are proper for resolution at trial and not for summary judgment.

The officers additionally argue that Clareet ran a stop sign in their presence, in violation of Texas Transportation Code § 544.010.  Although a non-jailable offense, "[t]he Supreme Court has made clear that a citizen's Fourth Amendment rights are not violated when he is lawfully arrested on a non-jailable offense."  *Zimmerman*, 657 F. App'x at 345 (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)).  *Zimmerman* concluded that Fourth Amendment rights are not violated because of an arrest for a Class C misdemeanor in Texas.  *Id.*  Section 544.010 provides:

> a)  Unless directed to proceed by a police officer or traffic-control signal, the operator of a vehicle or streetcar approaching an intersection with a stop sign shall stop as provided by Subsection (c).
>
> (b)  If safety requires, the operator of a vehicle approaching a yield sign shall stop as provided by Subsection (c).
>
>  (c)  An operator required to stop by this section shall stop before entering the crosswalk on the near side of the intersection.  In the absence of a crosswalk, the operator shall stop at a clearly marked stop line.  In the absence of a stop line, the operator shall stop at the place nearest the intersecting roadway where the operator has a view of approaching traffic on the intersecting roadway.

The officers have not pointed to facts explaining how, given the time at night, they observed Clareet violate the elements of this provision of the Transportation Code.  Officer Iwai testified that "The traffic stop was conducted because she ran a stop sign."  (Docket Entry No. 45-3 at 83).  The officers have not explained if or how Clareet stopped at all near the intersection, or how they were able to observe her failing to stop.

Clareet's daughter contests that her mother ran the stop sign.  (Docket Entry No. 51-2 at 1).  Clareet herself was unaware.  In her deposition, Clareet explained that when she was pulled over by Officers Iwai and Qazi, she was told that she ran a stop sign. She was asked:

> Q.      Are you disputing that you ran a stop sign?
> A.      No.
> Q.      You ran a stop sign?
> A.      I do not know.

17

(Docket Entry No. 45-9 at 24).

The body cam footage reveals Officer Qazi explaining to Clareet that she was stopped because she ran a stop sign, to which Clareet responded by mentioning a car issue. (Docket Entry No. 45-5 at 16:45-17:10). When Officer Iwai explained that Clareet had raised her charge from a Class C misdemeanor for running a stop sign to a Class A misdemeanor for displaying a fictitious license, she responded "Ok . . . sure you want to write me a ticket?" (Docket Entry No. 45-5 at 17:40-18:15). Officer Iwai then explained to Clareet that she was going to be arrested and she responded, "Okay go ahead." (Docket Entry No. 45-5 at 18:00-18:15).

The defendants argue that an officer's own testimony can be sufficient to find probable cause, even when the person arrested denies the officer's account. In *Deville*, the court explained that an officer's uncontradicted testimony that his radar gun detected a person speeding could establish probable cause for an arrest, but the plaintiff provided evidence that the officer had a history of problematic arrests, including falsified charges, and her own sworn testimony that she was not speeding because she had her cruise control set. The record showed reasons to disbelieve the officer's testimony, generating a factual dispute as to whether the officer detected her speeding. *Deville*, 567 F.3d at 165–66.

Clareet's deposition shows that she did not know whether she ran the stop sign. The body camera recording shows that she was willing to accept a traffic ticket so that she could go home. She was not resisting arrest. (Docket Entry No. 45-5 at 17:40-18:15). Clareet offered her daughter's declaration, in which her daughter recalls her mother stopping at the first stop sign to separate the children's food and unequivocally states that Clareet did not run the stop sign. (Docket Entry No. 51-2 at 1).

18

Although an officer's uncontradicted testimony about witnessing an offense may establish probable cause for an arrest, summary judgment is inappropriate if, as here, the plaintiff has provided a basis to disbelieve the officer's testimony. *Deville*, 567 F.3d at 165. Viewing the facts in the light most favorable to Clareet, and drawing all permissible inferences in her favor, does not show an objectively reasonable basis for the officers to believe that they had probable cause to arrest Clareet for running a stop sign. The officers have not pointed to evidence other than their own beliefs, and Clareet has provided a basis to question their reasonableness. The officers are not denied qualified immunity merely because they may have been mistaken, but because there are factual disputes material as to determining whether their accounts are credible and whether their belief that an offense was committed was objectively reasonable.

Because there are genuine factual disputes material to determining whether the officers observed Clareet running a stop sign and whether it was reasonable for the officers to believe that the photocopy of her identification was a fictitious identification, there are factual disputes material to determining whether the officers violated Clareet's constitutional rights by arresting her. It was clearly established in October 2019 that "[a]n arrest is unlawful unless it is supported by probable cause." *Flores v. City of Palacios,* 381 F.3d 391, 402 (5th Cir. 2004). These factual disputes prevent the court from concluding that, on this record, the officers are entitled to qualified immunity as a matter of law. *See Deville*, 567 F.3d at 166.

**IV.     Conclusion**

The motion for summary judgment filed by Muhammad Qazi and Daniel Iwai, (Docket Entry No. 45), is denied.  Their motion to strike, (Docket Entry No. 57), is denied.  Docket call is set for May 13, 2022, at 11:00 a.m. in Courtroom 11-B, United States Courthouse, 515 Rusk, Houston, Texas.

SIGNED on April 29, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge